STATE of Oklahoma ex rel. DEPARTMENT OF HIGHWAYS of the State of Oklahoma, Plaintiff in Error,

v.

H. A. PRUITT, Defendant in Error.

No. 43600.

Supreme Court of Oklahoma.

Aug. 3, 1971.

Tom Keltner, Oklahoma City, for plaintiff in error.

George & George, Ardmore, for defendant in error.

LAVENDER, Justice.

This appeal arises in a condemnation proceeding brought by the State of Oklahoma on relation of its Department of Highways against H. A. Pruitt as the owner of a 1653-acre tract of land in Carter County, Oklahoma.

In the proceeding, the State condemned a permanent easement containing 153 acres and about three miles in length across that tract for limited-access-highway purposes, together with temporary easements, involving an additional 17 acres of that tract, for incidental channel-straightening purposes.

After the court-appointed commissioners had fixed the owner's damages at $98,712.-50, the State deposited that amount with the clerk of the court and commenced work on the land, and each party filed a timely demand for a jury trial on the question of damages. A jury trial resulted in a verdict fixing the owner's damages at $70,000.-00.

The appeal involves the trial court's action in sustaining the property owner's motion for a new trial, and vacating the verdict of the jury, upon an express finding that, during their deliberations in the jury room after the cause had been submitted to them, the jurors, without the knowledge or consent of the property owner, had access to, and examined, a blackboard that had not been introduced in evidence and had certain figures written upon it, and that this was prejudicial to the property owner and prevented him from having a fair trial.

We relate this finding to the first statutory ground for a new trial (also alleged in the owner's motion for a new trial): "Irregularity in the proceedings of the * * * jury, * * *, by which the party was prevented from having a fair trial." The property owner concedes that there was no other ground for the granting of a new trial in this case.

At the jury trial, the land owner's expert witnesses (three of whom had served as the court-appointed commissioners and concurred at the trial) estimated the owner's total damages—based upon their valuations of the land, pecan trees, sheds, fences and ponds actually taken, and damage to the remaining land as a result of the taking—at $108,305.00, $99,012.50, $99,012.50, $99,012.50, and $110,000.00, respectively, and the State's expert witnesses estimated such damages at $60,141.00, $62,653.00, and $66,442.00, respectively.

The property owner's trial attorney was sworn as a witness, and was the only witness, at the hearing on the motion for a new trial. Summarized, the pertinent portions of his testimony are set forth herein.

During their closing arguments to the jury, the parties' attorneys wrote on a blackboard, in view of the jurors, the above-mentioned amounts of total damages as estimated by each of the witnesses. They are the figures involved in the trial court's findings of fact concerning the granting of a new trial. The blackboard was not introduced in evidence. It was in the court room when the jurors retired to consider their verdict and this attorney left the court room. He visited around on the same floor of the courthouse until he was informed that the jury was ready to return its verdict, and then he returned to the court room. After the jury returned its verdict for the defendant in the amount of $70,000, he entered a jury room ad-

joining a court room across the rotunda from the court room in which the trial had been held, and found therein the blackboard with the attorneys' notations still on it, and also found, on a table in that room, a sheet of paper with some penciled notations on one side of it. That sheet of paper was offered, and received, in evidence without objection.

The notations appearing on that sheet of paper are as follows, and are in approximately the following positions with relation to each other:

| | |
|---|---|
| 108 | 34,000 |
| 99 | 36,000 |
| 99 | |
| 99 | |
| 110 | |
| 60 | |
| 62 | · |
| 66 | |
| | 75,000 |
| 75,000 | |
| | 70,000 |
| OK     NO | 170 |
| 1 | 200 |
| | 34,000 |
| | 75,000 |

(In the group of eight smaller numbers, the 108 and the 110 have check marks after them, and the column has a circle around it. The number 70,000 has a check mark under it and also is circled.)

The witness noted that the circled number 70,000 appearing on this sheet of paper is the number of dollars stated in this jury's verdict, and that the eight numbers in the circled column of numbers are the respective numbers of thousands of dollars estimated by the various witnesses, which had been written on the blackboard by the parties' attorneys during their closing arguments to the jury. His theory is that those numbers on this sheet of paper, found after the trial in the same jury room with the blackboard in question establish that the jurors obtained the blackboard from the court room, in some manner, and used the attorneys' notations appearing thereon in their deliberations.

The attorney for the State told the court that he did not remember putting any figures on the blackboard during his summation, but would not contradict the other attorney's testimony that he had put some of the figures in question on the blackboard during his argument to the jury.

We note here that, at the trial, one of the expert witnesses on behalf of the property owner testified that it would cost four times as much as the land was worth to reclaim the 17 acres of land that the State had used for "temporary" easements for channel changes and that, in his opinion, the State had, in fact, "taken" 170 acres of land, rather than 153 acres.

Assuming that the number 70,000, and the numbers 108, 99, 99, 99, 110, 60, 62, and 66, appearing on the sheet of paper found in a jury room with the blackboard in question after the trial was over, are sufficient to establish that the blackboard, with the attorneys' notations of the expert witnesses' estimates of the owner's total damages still thereon, was in the jury room with this jury during its deliberations, other numbers on the same sheet of paper would indicate that the jury determined that a total of 170 acres of land having an average value of 200 dollars per acre and a total value of 34,000 dollars, had been taken by the State, and that the owner's other damages amounted to 36,000 dollars, making his total damages 70,000 dollars. This would indicate that, in arriving at their verdict as to the owner's total damages, the jurors relied upon other testimony of the witnesses and gave very little, if any, consideration to the expert witnesses' estimates of the owner's total damages, as such, noted on the blackboard.

The owner has urged the applicability of Peoples Finance & Thrift Co. v. Ferrier, (1942), 191 Okl. 364, 129 P.2d 1015 and Negrate v. Gunter (1955), Okl., 285 P.2d 194. The cases upon first examination ap-

pear applicable. They involved this court's review of the trial court's action in granting a motion for new trial. In each of the cases the jury took certain material into the jury room with them. In each case, however, the objectionable material had little, if any, connection with the testimony of witnesses heard during the trial, but, as in Peoples', involved one of the attorney's notes made for the purpose of assisting him in making his final argument to the jury. In Negrate the material consisted of letters and a telegram from one of the attorneys wherein he alleged certain matters in support of a motion for continuance. The grounds supportive of the inherent finding of prejudice to the losing party in those cases does not exist in this case.

Except that, in Eberle et ux. v. State of Oklahoma ex rel. Department of Highways (Okl.1963), 385 P.2d 868, the attorney for the property owners did not make any of the memoranda that, inadvertently, was taken to the jury room on the back of an admitted exhibit, and the involved memoranda consisted of estimates of the owner's total damages (differences between before and after values) as testified to by the State's witnesses only, the situation presented to the trial court on the property owner's motion for a new trial in the present case is essentially the same as the situation presented to the trial court on the property owners' motion for a new trial in the Eberle case.

In holding that the trial court did not abuse its discretion in overruling the property owners' motion for a new trial in that case, this court said (pages 874 and 875 of the Pacific report):

"Title 12 O.S.1961 § 78, provides that the court, in every stage of the proceeding must disregard any error or defect in the proceedings which does not affect the substantial rights of the adverse party and no judgment shall be reversed or affected by reason of such error or defect.

"The figures placed on the back of the exhibit were the same figures concerning the difference in values that had been placed in evidence by oral testimony of the State's witnesses. It was not new evidence submitted. Although such figures should not have been placed on the exhibit and taken to the jury room, we can not conclude that such action affected the substantial rights of the defendants * * *."

In the present case, the memoranda in question were the same figures concerning the owner's total damages that had been placed in evidence by the sworn testimony of all of the expert witnesses for both parties, and at least those based upon the sworn testimony of the property owner's witnesses were made (on the blackboard) by the attorney for the property owner. There is no suggestion that the attorney for the State, or the trial court, had anything whatsoever to do with the memoranda getting to the jury room during the juror's deliberations. If the substantial rights of the property owners in the Eberle case were not prejudicially affected by the memoranda involved in that case, the substantial rights of the property owner in the present case were not prejudicially affected by the memoranda involved in this case. A much stronger showing for reversal of the trial court's action respecting the motion for a new trial was made in this case than in the Eberle case.

The evidence at the hearing on the motion for a new trial in this case, indicates that, if, during their deliberations, the jurors had access to this blackboard and referred to the notations of the witnesses' estimates of the property owner's total damages, the property owner was not thereby prejudiced or prevented from having a fair trial. Since it is conceded that there was no other ground for a new trial, the trial court abused its discretion in granting the property owner's motion for a new trial and, based thereon, vacating the verdict of the jury.

The order sustaining that motion and vacating the verdict of the jury is reversed and the cause remanded to the trial court with directions to reinstate the verdict of the jury and to enter judgment thereon and in accord therewith.

BERRY, C. J., DAVISON, V. C. J., and WILLIAMS, BLACKBIRD, JACKSON, IRWIN, and McINERNEY, JJ., concur.